1    **WO**

2

3

4

5

6

7                        **IN THE UNITED STATES DISTRICT COURT**

8                          **FOR THE DISTRICT OF ARIZONA**

9    Southwest Fair Housing Council,            No. CV-19-00178-TUC-RM

10                     Plaintiff,               **ORDER**

11   v.

12   WG Chandler Villas SH LLC,

13                     Defendant.

14

15         Pending before the Court is Plaintiff's Motion in Limine to Preclude Testimony of

16   Defense Rebuttal Expert Robert Q. Pollard. (Doc. 66.) Defendant responded in

17   opposition. (Doc. 67.) The Court held an evidentiary hearing pursuant to *Daubert v.*

18   *Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), on September 29, 2021. Upon

19   considering the written briefing by the parties and the testimony and argument presented

20   at the evidentiary hearing, the Court will grant in part and deny in part the Motion in

21   Limine.

22         Plaintiff's Motion in Limine moves to preclude the testimony of Defendant's

23   rebuttal expert witness Robert Q. Pollard, Ph.D. pursuant to Federal Rule of Evidence

24   702 and *Daubert*, 509 U.S. 579. (Doc. 66.) Plaintiff argues that the testimony should be

25   precluded because (1) Dr. Pollard is not a qualified expert, (2) the testimony is unreliable

26   because Dr. Pollard does not explain how his experience leads to his conclusions nor

27   does he explain his methodology; (3) Dr. Pollard intends to testify as to pure

28   unsubstantiated speculations or beliefs and/or legal conclusions; and (4) Dr. Pollard

1    intends to testify to Defendant's employee's state of mind. (*Id.* at 2.) Plaintiff further

2    argues that Dr. Pollard's testimony would violate Fed. R. Evid. 403 by confusing and

3    misleading the jury and unduly prejudicing Plaintiff while providing little probative

4    value. (*Id.*) Thus, Plaintiff seeks preclusion of the testimony or, in the alternative, an

5    Order limiting Dr. Pollard's testimony to the narrow issue of rebutting Plaintiff's expert's

6    testimony regarding communications with deaf persons in a nursing home setting. (*Id.*)

7           In response, Defendant argues that Dr. Pollard's testimony should be admitted

8    because (1) Dr. Pollard is a qualified expert; (2) the testimony is reliably based on his

9    extensive experience in discrimination cases involving deaf individuals; (3) he will not

10   offer legal conclusions or testimony concerning Defendant's employee's state of mind;

11   (4) the testimony will help the jury because it is relevant to the factual issues the jury will

12   be deciding; and (5) Dr. Pollard was disclosed as an initial expert and is not limited to the

13   role of a "rebuttal expert." (Doc. 67.)

14          **I.      Legal Standard**

15          "Evidence is relevant if (a) it has any tendency to make a fact more or less

16   probable than it would be without the evidence; and (b) the fact is of consequence in

17   determining the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if

18   its probative value is substantially outweighed by a danger of one or more of the

19   following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

20   wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

21          Admissibility of expert testimony is governed by Rule 702 of the Federal Rules of

22   Evidence, which provides:

23              A witness who is qualified as an expert by knowledge, skill,
                experience, training, or education may testify in the form of
24              an opinion or otherwise if: (a) the expert's scientific,
                technical, or other specialized knowledge will help the trier of
25              fact to understand the evidence or to determine a fact in issue;
                (b) the testimony is based on sufficient facts or data; (c) the
26              testimony is the product of reliable principles and methods;
                and (d) the expert has reliably applied the principles and
27              methods to the facts of the case.
28

- 2 -

Fed. R. Evid. 702. This rule requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. To do so, the court must assess "whether the reasoning or methodology underlying the testimony" is valid and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93. This gatekeeping function applies not only to expert testimony based on "scientific" knowledge but also expert testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147-49 (1999). Its purpose is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.

Factors relevant to the reliability of expert testimony include, but are not limited to, whether the theory or technique used by the expert "can be (and has been) tested," whether it "has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards controlling the technique's operation," and the degree of acceptance in the relevant community of expertise. *Daubert*, 509 U.S. at 593-94; *Kumho Tire*, 526 U.S. at 149-50. In assessing the reliability and helpfulness of proffered expert testimony, "no single factor is necessarily dispositive of the reliability of a particular expert's testimony." Fed. R. Evid. 702, Advisory Committee Notes (2000) (internal citations omitted).

Rule 702's "helpfulness" standard requires that expert testimony be relevant to issues in the case and that there be "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591. An expert's opinions may not be premised on "subjective belief or unsupported speculation." *Id*. at 590 (internal quotation marks omitted). Relevancy requires that "[t]he evidence ... logically advance a material aspect of the party's case." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

The Court's gatekeeping obligation under Rule 702 is "a flexible one" that "must be tied to the facts of a particular case." *Kumho Tire* at 150. Thus, "the trial judge must

1  have considerable leeway in deciding in a particular case how to go about determining

2  whether particular expert testimony is reliable." *Id*. at 152. Whether to admit expert

3  testimony is subject to the discretion of the Court. *See General Elec. Co. v. Joiner*, 522

4  U.S. 136, 143 (1997).

5        **II.**    **Background**

6        Dr. Pollard is a Clinical Professor of Psychiatry at the University of Rochester

7  School of Medicine in Rochester, New York. (*See* Doc. 66-1.) He is also a Professor and

8  Associate Dean of Research at the Rochester Institute of Technology's National

9  Technical Institute for the Deaf ("NTID"). (*Id*.) His career has been dedicated to "the

10  subject of psychology and deaf individuals and related topics such as sign language

11  interpreting, and public health and the deaf population." (*Id*. at 12.) He has been a faculty

12  member in the Department of Psychiatry at the University of Rochester School of

13  Medicine for 29 years. (*Id*.) He founded the University's Deaf Wellness Center, which

14  conducts a variety of clinical service, training, research, and scholarship activities. (*Id*.)

15  In August 2016, he became the first permanent Associate Dean of Research at the NTID.

16  (*Id*.) There, he is responsible for the NTID's research activities and oversees training

17  grants and contract activities. (*Id*.) He engages in clinical service and research and has

18  published over 100 articles, books, and book chapters, served as principal investigator on

19  55 grants totaling over $6M, delivered over 250 invited addresses throughout the U.S.

20  and abroad, and made over 100 conference presentations. (*Id*.) He has also served as an

21  expert witness in over 30 cases alleging discrimination against a deaf individual. (*Id*. at

22  10.)

23        The opinions expressed in Dr. Pollard's report are based upon his review of

24  Plaintiff's expert Dr. Shepard-Kegl's report, along with his experience and knowledge in

25  the fields of psychology and deafness and related topics. (*See id*. at 5.) Dr. Pollard's

26  expert report first reviews the conclusions of Dr. Shepard-Kegl's report and responds to

27  specific statements contained therein. (Doc. 66-1 at 4-6.) Specifically, Dr. Pollard

28  describes Dr. Shepard-Kegl's report as "incongruous" because of the distinction between

the "heterogeneity" and variability of deaf individuals—i.e. their unique abilities, needs, and preferences—and Dr. Shepard-Kegl's application of "general" information regarding deaf individuals to the fictional deaf grandmother present in this case. (*Id*. at 5-6; *see also* Doc. 62.)

Dr. Pollard's expert report then reviews the transcripts of testers' communications with Defendant's staff and analyzes the extent to which those interactions and/or communications are consistent with his knowledge and experience regarding deaf individuals. (*Id*. at 7-10.) Dr. Pollard points out purported inconsistencies between the substance of the transcripts and Plaintiff's arguments regarding the denial of a reasonable accommodation to a deaf individual; for example, that Plaintiff's tester does not disclose until well into her conversation with Defendant's employee that the fictional grandmother is deaf or that the grandmother has the ability to read and write, as well as the tester's failure to raise the issue of reasonable accommodations when discussing her grandmother's activities such as going to the movies or restaurants. (*Id*.)

Dr. Pollard concludes that the "general" nature of Dr. Shepard-Kegl's expert report renders it not relevant to this litigation because it addresses neither a specific deaf individual nor anything specific regarding Defendant's assisted living facility. (*Id*. at 10.) He further concludes that the report fails to thoroughly address the tester's data that might suggest a different outcome than that argued by Plaintiff. (*Id*.) Lastly, he concludes that the Defendant in this case did not fail to do what was needed to meet the fictional deaf individual's reasonable accommodation needs. (*Id*.)

### III.   *Daubert* Hearing

The Court held a *Daubert* hearing on September 29, 2021, at which Dr. Pollard testified as to his qualifications, methodology, experience, and conclusions, and each party presented its arguments as to why Dr. Pollard's expert testimony should be either excluded or admitted. Dr. Pollard testified that his knowledge of reasonable accommodations for deaf individuals stems from his professional experience, his published research, his previous testimony in approximately fifty civil cases involving an

1  American Sign Language ("ASL") interpreter as a reasonable accommodation, and his
2  personal lived experience. Dr. Pollard then testified as to the methodology that he would
3  use to determine whether an ASL interpreter was a reasonable accommodation for a deaf
4  individual. He testified that he would consider two categories of information: information
5  about the deaf individual and information about the situation or circumstance in which
6  the interpreter was purportedly necessary. As to a deaf individual, Dr. Pollard testified
7  that he would consider (1) the individual's preferred communication modality; (2) the
8  individual's proficiency in that modality; (3) whether the individual uses hearing aids or
9  other assistive technologies; (4) the individual's "fund of information," that is, the
10 quantity and quality of the information or knowledge they possess; and (5) whether the
11 individual has other developmental issues. As to a situation or circumstance, Dr. Pollard
12 testified that he would consider (1) the stakes of the situation—for example, a medical
13 procedure (high stakes) vs. a sales transaction (low stakes); (2) the communication
14 methods used in the situation; and (3) the extent of hearing individuals' knowledge about
15 deaf individuals and deafness.

16 **IV.    Discussion**

17 **A. Dr. Pollard is a qualified expert.**

18 Plaintiff argues first that Dr. Pollard is not a qualified expert because (1) he has no
19 experience working in assisted living facilities that serve deaf individuals; (2) he has not
20 testified as an expert witness at a civil trial in the past four years; and (3) he has no
21 experience evaluating testers in fair housing cases. (Doc. 66 at 3.) In response, Defendant
22 contends that the fact that Dr. Pollard has no experience working in an assisted living
23 facility and has not testified at a civil trial in the last four years does not undermine his
24 extensive experience with the issues involving reasonable accommodations for deaf
25 individuals that the jury will decide and thus he is a qualified expert. (Doc. 67 at 4-5.)

26 The Court finds that Dr. Pollard is a qualified expert. His extensive experience
27 working with deaf individuals in professional, clinical, research, and personal settings
28 qualify him as an expert on the matters to which his testimony pertains. Furthermore, Dr.

1   Pollard has testified as an expert in at least thirty civil legal cases. The Court finds no

2   basis upon which to question his qualifications as an expert witness.

3   **B. Dr. Pollard's testimony will be helpful to the jury.**

4   Plaintiff also argues that Dr. Pollard's testimony would not be helpful to the jury

5   because it merely recounts the Complaint and summarizes documents, both of which the

6   jury will be able to view and evaluate for itself. (Doc. 66 at 6.) Plaintiff argues that Dr.

7   Pollard's testimony does not provide information beyond that of a typical lay person and

8   that the jury can accomplish its own analysis of the evidence without Dr. Pollard's

9   opinions. (*Id*.) In response, Defendant contends that Dr. Pollard has specialized

10   knowledge and experience that will assist the jury in determining whether an ASL

11   interpreter was necessary to ensure effective communication under the circumstances

12   present in this case, and that this issue is beyond the scope of a typical juror's knowledge.

13   (Doc. 67 at 6-7.)

14   The Court finds that Dr. Pollard's testimony will assist the jury in its fact-finding

15   duties to the extent it is admissible as set forth in this Order, except for his testimony that

16   Defendant did not fail or refuse to provide an ASL interpreter, discussed *infra* at Section

17   IV(E).

18   **C. Dr. Pollard's rebuttal testimony regarding Dr. Shepard-Kegl's expert**

19   **report is admissible.**

20   Plaintiff argues that if Dr. Pollard is permitted to testify, he should be limited to

21   rebuttal testimony only. (Doc. 66 at 8.) Plaintiff contends that Dr. Pollard was only

22   engaged in this case to rebut the opinions of its expert witness, Dr. Shepard-Kegl, and

23   thus to whatever extent his report exceeds the bounds of Dr. Shepard-Kegl's report it

24   should be excluded. (*Id.* at 8-9.) In response, Defendant contends that it disclosed Dr.

25   Pollard as its initial expert and did not identify him solely as a rebuttal expert, and thus he

26   is not limited to acting in that capacity. (Doc. 67 at 7-8.)

27   Plaintiff does not dispute Dr. Pollard's rebuttal testimony. As the Court has found

28   Dr. Pollard to be a qualified expert and has also found that his testimony will be helpful

1    to the jury, his testimony rebutting Dr. Shepard-Kegl's report is admissible. The Court

2    further finds that Defendant disclosed Dr. Pollard as an initial expert and therefore his

3    testimony is not limited to rebuttal testimony on that basis. (*See* Doc. 67 at 8.)

4    **D. Dr. Pollard's testimony is not reliable regarding whether an ASL**

5    **interpreter was a reasonable accommodation for the fictional deaf grandmother.**

6    Plaintiff argues that Dr. Pollard's testimony is unreliable because he has not

7    explained how his experiences in clinical psychology led to the conclusions he reached,

8    why his experience is sufficient, or how he applied his experience to the facts. (Doc. 66 at

9    4.) Thus, Plaintiff argues, because Dr. Pollard has not demonstrated a reliable

10   methodology for forming his opinions, they must be excluded. (*Id*.) In response,

11   Defendant contends that Dr. Pollard's professional and expert witness experiences are

12   directly relevant to the issues that the jury will decide and that throughout his report, Dr.

13   Pollard explains why he reached the conclusions he did. (Doc. 67 at 5-6.)

14   The Court agrees with Plaintiff that Dr. Pollard has failed to adequately explain

15   how his experience and knowledge apply to the issue of whether an ASL interpreter was

16   necessary as a reasonable accommodation in this case. Specifically, Dr. Pollard testified

17   at the *Daubert* hearing that his methodology in determining whether an ASL interpreter

18   would be a reasonable accommodation for a deaf individual includes an evaluation of (1)

19   the individual's preferred communication modality; (2) the individual's proficiency in

20   that modality; (3) whether the individual uses hearing aids or other assistive technologies;

21   (4) the individual's "fund of information," that is, the quantity and quality of the

22   information or knowledge the individual possesses; and (5) whether the individual has

23   other developmental issues. There is no evidence in Dr. Pollard's report or his hearing

24   testimony that he applied these factors to the fictional deaf grandmother who was the

25   prospective tenant of Defendant's facility. Indeed, Dr. Pollard testified that he did not

26   have enough information about the fictional deaf grandmother to evaluate her need for an

27   interpreter based on those factors. Thus, there is no way that Dr. Pollard could have

28   properly applied his methodology to the facts at issue. *See Daubert*, 509 U.S. at 592-93.

- 8 -

1    Accordingly, Dr. Pollard's testimony regarding the fictional deaf grandmother's need or

2    lack thereof for an ASL interpreter will be excluded.

3        However, Dr. Pollard's testimony is admissible to the extent that it sets forth his

4    opinions about how the relative of a deaf individual—in this case, Plaintiff's tester—

5    would behave or communicate in the situation present in this case. Dr. Pollard also may

6    testify to his opinion that the tester did not provide Defendant's employee Mr. Ommegard

7    with sufficient information for Defendant to be able to determine whether an ASL

8    interpreter was necessary as a reasonable accommodation. Dr. Pollard adequately

9    explained how he applied his methodology in evaluating the actions and communications

10   of Plaintiff's tester, and his expert opinions on this matter will assist the jury in its fact-

11   finding.

12       **E. Dr. Pollard's conclusions regarding whether Defendant failed to provide a**

13   **reasonable accommodation are inadmissible.**

14       Plaintiff argues that Dr. Pollard's opinions offer pure conclusions of law and thus

15   are not admissible under Federal Rule of Evidence 702. (Doc. 66 at 6.) Specifically,

16   Plaintiff takes issue with Dr. Pollard's statements that (1) Defendant did not "flat-out"

17   deny interpreter services and (2) Defendant did not fail to do what was necessary to meet

18   the fictional deaf grandmother's needs for reasonable accommodations. (*Id*. at 6-7.)

19   Plaintiff contends that these statements are conclusions of law and thus should be

20   excluded. (*Id*.) In response, Defendant contends that these statements are not legal

21   opinions or conclusions but rather are opinions on an "ultimate issue" in the case and

22   thus, pursuant to Federal Rule of Evidence 704, are not automatically objectionable on

23   that basis. (Doc. 67 at 7.)

24       "[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an

25   opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523

26   F.3d 1051, 1058 (9th Cir. 2008); *see also United States v. Boulware*, 558 F.3d 971, 975

27   (9th Cir. 2009) (trial court did not abuse its discretion in excluding expert testimony in

28   the form of a legal opinion).

1    As discussed above in Section IV(D), Dr. Pollard's application of his methodology

2    to the issue of whether the fictional deaf grandmother required an ASL interpreter as a

3    reasonable accommodation for her deafness is inadmissible.[1] Because Dr. Pollard may

4    not testify to his opinion that an ASL interpreter was not a reasonable accommodation

5    under these circumstances, he likewise may not testify to his conclusion, which follows

6    from that opinion, that Defendant did not fail to provide that reasonable accommodation.

7    In other words, because Dr. Pollard may not opine on the issue of whether the

8    grandmother needed the requested reasonable accommodation, he may not opine on

9    whether that request was properly denied because that conclusion rests entirely on the

10   inadmissible portions of his opinion.

11   Furthermore, the Court finds that Dr. Pollard's conclusion that Defendant did not

12   fail to meet the fictional deaf grandmother's reasonable accommodation needs is a legal

13   conclusion and is also inadmissible on that basis. *See Nationwide Transp. Fin.*, 523 F.3d

14   at 1058; *see also* Doc. 62 at 19-20 (denying summary judgment on the issue of whether

15   Defendant violated the Americans with Disabilities Act by failing to provide a reasonable

16   accommodation in the form of an ASL interpreter).

17   **F. Dr. Pollard's statements regarding Defendant's employee Mr. Ommegard**

18   **are inadmissible.**

19   Plaintiff argues that Dr. Pollard's report improperly offers opinions as to

20   Defendant's employee's state of mind. (Doc. 66 at 7-8.) Plaintiff argues that Dr. Pollard's

21   statements as to the state of mind of Defendant's employee Mr. Ommegard,[2] are

22   improper because they are subjective and rest on assumptions not based on Dr. Pollard's

23   knowledge or experience. (*Id.*) In response, Defendant contends that Dr. Pollard's

24   statements regarding Mr. Ommegard's intentions during his conversation with Plaintiff's

25

26   [1] Also inadmissible is Dr. Pollard's testimony that Defendant did not fail or refuse to provide an ASL interpreter. The Court finds that such testimony would not be helpful to

27   the jury because the jury can evaluate for itself, based on the recorded conversations between Plaintiff's tester and Defendant's employee, whether Defendant failed or refused

28   to provide an ASL interpreter.
     [2] Mr. Ommegard is Defendant's Community Sales Director, with whom Plaintiff's tester toured the assisted living facility in June 2016. (*See* Doc. 62 at 4.)

1   tester are "interpretations" that point out information Plaintiff's tester failed to provide.

2   (Doc. 67 at 7.) Defendant argues that the point of Dr. Pollard's opinions regarding Mr.

3   Ommegard's statements is to show Plaintiff's tester's failure to clearly express her

4   fictional deaf grandmother's need for an interpreter. (*Id.*)

5          The Court agrees with Plaintiff that Dr. Pollard's testimony regarding Mr.

6   Ommegard's intentions, state of mind, and scope of authority is not admissible. Dr.

7   Pollard did not explain how he applied his methodology to Mr. Ommegard's

8   communications with Plaintiff's tester. Furthermore, Dr. Pollard's opinions regarding Mr.

9   Ommegard's statements appear to be subjective and not based on his knowledge or

10  experience. Dr. Pollard testified during the *Daubert* hearing that he did not review Mr.

11  Ommegard's job description or qualifications and knew nothing about him. Thus, his

12  expert testimony on this matter is not reliable and will be excluded.[3]

13         Accordingly,

14         **IT IS ORDERED** that Plaintiff's Motion in Limine to Preclude Testimony of

15  Defense Rebuttal Expert Robert Q. Pollard. (Doc. 66) is **granted in part and denied in**

16  **part** as follows:

17         (1) Dr. Pollard's testimony regarding whether an ASL interpreter was a reasonable

18  accommodation for the fictional deaf grandmother is **inadmissible.**

19         (2) Dr. Pollard's testimony regarding whether Defendant failed to provide a

20  reasonable accommodation is **inadmissible.**

21         (3) Dr. Pollard's testimony regarding the intentions, state of mind, and scope of

22  authority of Defendant's employee Mr. Ommegard is **inadmissible**.

23  . . . .

24  . . . .

25  . . . .

26  . . . .

27  [3] Dr. Pollard may testify generally to the interactions and communications between Mr. Ommegard and Plaintiff's testers in order to explain his opinions. His testimony
28  regarding Mr. Ommegard is inadmissible only to the extent that he reaches conclusions about Mr. Ommegard's state of mind and/or scope of authority.

1    (4) Dr. Pollard's testimony is otherwise **admissible**.

2    Dated this 13th day of October, 2021.

Honorable Rosemary Márquez
United States District Judge