**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Southwest Fair Housing Council, | No. CV-19-00178-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| WG Chandler Villas SH LLC, | |
| Defendant. | |

Pending before the Court is Plaintiff Southwest Fair Housing Council's Motion for Attorneys' Fees, Costs, and Litigation Expenses.  (Doc. 116.)  Defendant responded in opposition (Doc. 121), and Plaintiff replied (Doc. 128).  For the reasons that follow, the Motion will be partially granted.

## I.   Background

Plaintiff is an organization that seeks to ensure equal access to housing in Arizona. (Doc. 106 at 15, 54, 132; Doc. 110 at 2.)  Defendant WG Chandler Villas SH LLC is a residential apartment complex located in Chandler, Arizona that provides private apartments for active seniors.  (Doc. 48 at 1; Doc. 54 at 2.)  Plaintiff sued Defendant and numerous other entities, alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3602, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and the Arizona Fair Housing Act ("AZFHA"), A.R.S. § 41-1491, *et*

*seq.* (Doc. 2.)  The Court severed the action on March 27, 2019, and Plaintiff's claims against Defendant proceeded in the above-entitled case.  (Docs. 1, 2.)  Plaintiff's First Amended Complaint alleges that, during an exchange with one of Plaintiff's testers, Defendant refused to provide an American Sign Language ("ASL") interpreter and a flashing doorbell to a prospective deaf resident.  (Doc. 2 at 13.)

On March 22, 2021, the Court granted summary judgment in Defendant's favor on Plaintiff's Rehabilitation Act and ACA claims, as well as on the ADA, FHA, and AZFHA claims to the extent they alleged a failure to provide an ASL interpreter.  (Doc. 62.)  The Court granted summary judgment in Plaintiff's favor on the issue of standing and denied summary judgment on the ADA, FHA, and AZFHA claims to the extent they alleged a failure to provide a flashing doorbell accommodation.  (*Id.*)  The parties held unsuccessful settlement conferences on July 29, 2021 (Doc. 73), November 5, 2021 (Doc. 79), and March 30, 2022 (Doc. 91).

After a two-day bench trial held on October 25-26, 2022, the Court found that Defendant violated the ADA, FHA, and AZFHA by refusing to provide a potential deaf resident with the reasonable accommodation of a flashing doorbell, thereby denying equal access to Defendant's safety check service and other services requiring a staff member to enter a resident's apartment.  (Doc. 110.)  The Clerk of Court thereafter entered judgment in Plaintiff's favor on the ADA, FHA, and AZFHA claims.  (Doc. 111.)

## II.        Legal Standard

The ADA, FHA, and AZFHA each permit a prevailing plaintiff to recover attorneys' fees and costs.  *See* 42 U.S.C. § 12205, 42 U.S.C. § 3613(c)(2), A.R.S. § 41-1491.36.  In civil rights cases where an award of attorneys' fees is authorized by statute, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation marks omitted).

Courts employ a two-step "lodestar method to determine a reasonable attorney's fees award."  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (internal quotation

marks omitted)).  First, to calculate the lodestar figure, the court must determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.  "Second, the court determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure." *Kelly*, 822 F.3d at 1099.

In determining what constitutes a reasonable hourly rate, courts look to the prevailing market rates in the relevant community "for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (courts generally look to the rates of attorneys practicing in the forum district).  The party seeking an award of attorneys' fees bears the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).  "[A]ffidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate." *Id.* (internal quotation and alteration marks omitted).

Counsel for the prevailing party should exclude hours that are "excessive, redundant, or otherwise unnecessary," and "billing judgment is an important component in fee setting." *Hensley*, 461 U.S. at 433–34 (internal quotation marks omitted).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 434.

In the second part of the analysis—determining whether the lodestar figure should be adjusted upward or downward—courts consider the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7)

time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained; (9) the
experience, reputation, and ability of the attorneys; (10) the
"undesirability" of the case; (11) the nature and length of the
professional relationship with the client; and (12) awards in
similar cases.

*Carter v. Caleb Brett LLC*, 757 F.3d 866, 869 (9th Cir. 2014); *see also* LRCiv 54.2(c)(3).

A mere statement that the court has considered these factors is insufficient; the court must "articulate with sufficient clarity the manner in which it makes its determination." *Carter*, 757 F.3d at 869 (internal quotation marks omitted).

The factor of "the results obtained . . . is particularly crucial where a plaintiff is deemed prevailing even though he succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434 (internal quotation marks omitted). When a plaintiff has achieved only partial success, the court must ask whether the plaintiff "fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded," and whether the plaintiff "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* The lodestar figure may be excessive if a plaintiff achieved only partial success, "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in god faith." *Id.* at 436.

Local Rule of Civil Procedure 54.2(c) requires that a motion for award of attorneys' fees be supported by a memorandum of points and authorities that discusses the party's eligibility and entitlement to the award and the reasonableness of the amount sought, based on the listed factors. The party seeking fees must also provide an itemized statement setting forth: "(A) The date on which the service was performed; (B) The time devoted to each individual unrelated task performed on such day; (C) A description of the service provided; and (D) The identity of the attorney, paralegal, or other person performing such service." LRCiv 54.2(e)(1). Rule 54.2(e)(2) provides that "[t]he party seeking an award of fees must adequately describe the services rendered so that the reasonableness of the charge can be evaluated." The Rule provides examples of sufficient service descriptions, including (1) telephone calls "must identify all

participants and the reason for the telephone call"; (2) legal research "must identify the specific legal issue researched and, if appropriate . . . the pleading or document"; and (3) preparation of pleadings and documents must identify the document and "the activities associated with its preparation."  LRCiv 54.2(e)(2).

### III.   Discussion

Plaintiff moves for an award of $161,432.50[1] in attorneys' fees and $3,255.05[2] in non-taxable expenses pursuant to 42 U.S.C. § 12205, 42 U.S.C. § 3613(c)(2), and A.R.S. § 41-1491.36.  (Doc. 116.)  Plaintiff seeks fees for work performed by lawyers and legal support staff employed by Richards & Moskowitz PLC, Baskin Richards PLC, and Eisenberg & Baum, LLP.  (Doc. 116 at 4.)[3]       Plaintiff provides an itemized statement of time and expenses incurred by Eisenberg & Baum, LLP timekeepers, reflecting 260.80 hours billed for a total attorneys' fee request of $76,030.00.  (Doc. 116-1 at 13-36.) Plaintiff also provides billing records reflecting 136 hours billed by Baskin Richards PLC timekeepers, for a total of $47,375.00 billed by that firm, and 139.10 hours billed by Richards & Moskowitz PLC timekeepers, for a total of $38,027.50 billed by that firm. (Doc. 116-1 at 43, 59-68, 70-78.)  Plaintiff argues that the requested attorneys' fees are reasonable considering the results obtained in this lawsuit, the customary fees charged by attorneys of similar experience; the time and labor involved in obtaining resolution of this case; the complexity of the work; counsel's skill, ability, experience, and reputation; the preclusion of other employment by counsel; the undesirability of civil rights cases such as this; the contingent fee charged by counsel;[4] and the nature of counsel's professional

---

[1] Plaintiff's Motion requests $38,027.00 in fees charged by Richards & Moskowitz PLC, but the billing records submitted by that firm reflect $38,027.50 in charged fees. (*Compare* Doc. 116 at 4, *with* Doc. 116-1 at 43, 68.)  Accordingly, the Court assumes that Plaintiff's Motion contains a typo and that Plaintiff is requesting $38,027.50 in fees charged by Richards & Moskowitz PLC, for a total requested fee award of $161,432.50.

[2] At varying points, Plaintiff's Motion requests "expenses in the amount of $3,255.05," travel-related expenses of $3,698.70 and expert witness fees of $800 (for a total expense award of $4,498.70), and "costs and expenses in the amount of $3,803.14."  (Doc. 116 at 13-15.)  The attached documentation delineates expenses of $3,255.05 (Doc. 116-1 at 80), and the Court assumes the other figures listed in Plaintiff's Motion are erroneous.

[3] Richards & Moskowitz PLC was formerly known as Baskin Richards PLC.  (*See* Doc. 116-1 at 39, 56-57.)

[4] Plaintiff provides engagement letters for Eisenberg & Baum, LLP and Richards & Moskowitz PLC, reflecting contingent fee arrangements.  (Doc. 116-1 at 49-57.)

relationship with Plaintiff.  (Doc. 116 at 3-12.)

Defendant does not contest Plaintiff's entitlement to an award of attorneys' fees under the ADA, FHA, and AZFHA.  (*See* Doc. 121 at 6.)  However, Defendant argues that Plaintiff failed to comply with Local Rule of Civil Procedure 54.2(d)(1)'s meet-and-confer requirement and that Plaintiff's requested fee award is unreasonably high.  (*Id.* at 8-17.)  Plaintiff's Reply reduces the requested attorneys' fees by $1,860.00 in response to Defendant's objections concerning duplicative entries, but Plaintiff argues that Defendant's objections are otherwise meritless.  (Doc. 128; *see also* Doc. 128-1 at 2.)

### A. Meet-and-Confer Requirement

Defendant argues that Plaintiff's fee request should be denied or reduced because Plaintiff failed to comply with Local Rule of Civil Procedure 54.2(d)(1)'s meet-and-confer requirement.  (Doc. 121 at 5-6, 8-9.)  The Local Rules of Civil Procedure provide:

> No motion for award of attorneys' fees will be considered unless a separate statement of the moving counsel is attached to the supporting memorandum certifying that, after personal consultation and good faith efforts to do so, the parties have been unable to satisfactorily resolve all disputed issues relating to attorneys' fees or that the moving counsel has made a good faith effort, but has been unable, to arrange such conference. The statement of consultation shall set forth the date of the consultation, the names of the participating attorneys and the specific results or shall describe the efforts made to arrange such conference and explain the reasons why such conference did not occur.

LRCiv 54.2(d)(1).

Attached to Plaintiff's Motion for Attorney Fees is a Certificate of Attempted Good Faith Consultation.  (Doc. 116-1 at 91-94.)  The Certificate avers that Plaintiff's counsel emailed Defendant's counsel at 4:24 p.m. on the day the Motion for Attorney Fees was filed.  (*Id.* at 92; *see also id.* at 97, 99.)  Plaintiff argues that "[g]rounds exist to find" that it "sufficiently complied" with LRCiv 54.2(d)(1).  (Doc. 128 at 11.)

Emailing opposing counsel minutes before close-of-business on the day a motion is due does not constitute a good-faith effort at personal consultation.  *See Shupe v. Kroger Co.*, No. CV-17-00496-TUC-DCB, 2018 WL 9708467, at *1 (D. Ariz. Mar. 6,

2018) (finding good-faith personal consultation requires telephonic or in-person contact rather than merely written contact). Due to Plaintiff's failure to comply with LRCiv 54.2(d)(1), the Court will reduce Plaintiff's fee award by the amount Plaintiff's counsel billed for the preparation of the Motion for Attorneys' Fees. *See Jarman v. Am. Fam. Ins. Co.*, No. CV-18-00526-PHX-SMB, 2021 WL 1947509, at *3 (D. Ariz. May 14, 2021) (reducing fee award by amount spent on preparing fee application due to party's non-compliance with LRCiv 54.2's personal consultation requirements); *In re Arb. Proceeding Between Scottsdale Ins. Co. v. John Deere Ins. Co.*, No. CV-15-00671-PHX-PGR, 2016 WL 3951740, at *1 (D. Ariz. July 22, 2016) (same). This results in a reduction of $3,025.00.[5]

## B. Reasonable Hourly Rates

Plaintiff supports its Motion with declarations by attorneys Andrew Rozynski ("Rozynski"), a partner at the law firm Eisenberg & Baum, LLP (Doc. 116-1 at 2-11), and William Richards ("Richards"), a managing member of Richards & Moskowitz PLC and former managing member of Baskin Richards PLC (Doc. 116-1 at 38-47). Rozynski describes his qualifications and those of Eisenberg & Baum, LLP timekeepers Reyna Lubin ("Lubin"), David Hommel ("Hommel"), Andrew Clark ("Clark"), William Juhn ("Juhn"), and Colton Wakefield ("Wakefield"). (*Id.* at 2-10.)[6] In *Southwest Fair*

---

[5] The eliminated entries are as follows:
    1.00 hours billed by RL on 3/9/23 ($275.00)
    0.50 hours billed by AR on 3/9/23 ($175.00)
    1.20 hours billed by AR on 3/10/23 ($420.00)
    0.40 hours billed by SMM on 2/28/23 ($50.00)
    0.20 billed by GJE on 3/1/23 ($45.00)
    0.70 billed by WAR on 3/2/23 ($297.50)
    1.10 hours billed by GJE on 3/2/23 ($247.50)
    0.30 billed by NMR on 3/2/23 ($37.50)
    0.50 hours billed by SMM on 3/2/23 ($62.50)
    0.20 hours billed by SMM on 3/3/23 ($25.00)
    2.00 hours billed by NMR on 3/9/23 ($250.00)
    1.50 hours billed by WAR on 3/10/23 ($637.50)
    0.30 hours billed by SMM on 3/10/23 ($37.50)
    3.00 billed by NMR on 3/10/23 ($375.00)
    0.40 hours billed by GJE on 3/10/23 ($90.00)
(Doc. 116-1 at 34-35, 65-66.)
[6] Rozynski describes the qualifications of Eric Baum and Cort McDonough, but the Court has located no timekeeping entries attributable to either individual in this case.

1   *Housing Council v. WG Scottsdale LLC*, No. 4:19-cv-00180-RM ("CV 19-180"), this

2   Court found the following rates reasonable for Eisenberg & Baum, LLP timekeepers:

3   $350 per hour for Rozynski, $275 per hour for Lubin, $275 per hour for Hommel, $225

4   per hour for Clark, and $125 per hour for paralegals and law clerks, including Wakefield.

5   (Doc. 170 at 11 in CV 19-180.)   The Court finds those rates reasonable in the above-

6   captioned case as well, based on the qualifications discussed in Rozynski's declaration.

7   The Court finds that the requested rate of $225 per hour is reasonable for Juhn, who

8   graduated from Georgetown University in 2016, who has co-authored summary judgment

9   briefs and appellate briefs with a focus on representation of deaf individuals, and whose

10   work in this matter involved editing dispositive motions.  (*See* Doc. 116-1 at 9.)

11          In his declaration, Richards describes his qualifications and those of Baskin

12   Richards PLC and Richards & Moskowitz PLC timekeepers Peter Silverman

13   ("Silverman"), Shayna Stuart ("Stuart"), Austin Miller ("Miller"), David Wood

14   ("Wood"), Gideon Esakoff ("Esakoff"), and Kaitlyn Smith ("Smith").  (Doc. 116-1 at 39-

15   42.)  In *Southwest Fair Housing Council v. WG Scottsdale LLC*, the Court found the

16   following rates reasonable for Baskin Richards PLC and Richards & Moskowitz PLC

17   timekeepers: $425 per hour for Richards, $350 per hour for Silverman, $275 per hour for

18   Stuart,[7] $225 per hour for Miller, $300 per hour for Wood, and $125 per hour for

19   paralegals and law clerks.  (Doc. 170 at 10 in CV 19-180.)[8]  The Court finds those rates

20   reasonable in the above-captioned case as well, based on the qualifications discussed in

21   Richards's declaration.  The Court finds that the requested rate of $225 is reasonable for

22   Esakoff, who graduated from Arizona State University Sandra Day O'Connor College of

23   Law in 2021 and first worked for Richards & Moskowitz PLC in 2020 as a law clerk,

24

25   [7] The Court will award $275 for the work Stuart performed at Richards & Moskowitz
     PLC and $225 per hour for the work she performed at Baskin Richards PLC, as requested
     by Plaintiff. (*See* Doc. 116-1 at 41.)

26   [8] The billing records of Richards & Moskowitz PLC include entries by timekeepers
     Maria Luque Villa, Nicole M. Rynearson, Gabriela Garcia, and Suzanna M. Morales,

27   who are not discussed in Richards's declaration.  (Doc. 116-1 at 68.)  These individuals
     appear to be paralegals.  The billing records of Baskin Richards PLC include an entry by

28   an individual with the initials SRP, who also appears to be a paralegal.  (Doc. 116-1 at
     70.)

gaining familiarity with the firm's practice and clients.  (Doc. 116-1 at 42.)

Defendant disputes the reasonableness of the rate charged for work performed by Smith.  (Doc. 121 at 14-15.)  Richards's declaration states that Smith worked on the above-captioned case while a law student and seeks a rate of $125 per hour for work performed by law clerks.  (Doc. 116-1 at 42.)  However, the billing records submitted in conjunction with Richards's declaration charge a rate of $225 per hour for Smith's work.  (*See id.* at 63-65.)  In its Reply, Plaintiff argues that the rate of $225 per hour applies to work Smith performed after becoming an attorney and that the rate is reasonable for a young attorney.  (Doc. 128 at 9.)  Plaintiff submits evidence reflecting Smith's admission to the Arizona bar on October 31, 2022.  (Doc. 128-1 at 4.)

The billing records attached to Plaintiff's Motion reflect that Smith's work on this case was performed after her October 31, 2022 admission to the bar.  (*See* Doc. 116-1 at 63-65.)  Richards's declaration, however, fails to adequately describe Smith's qualifications as an attorney; Richards notes only that Smith served as an extern while a third-year law student.  (Doc. 116-1 at 42.)  The Court accordingly does not find that Plaintiff has shown that a rate of $225 per hour is reasonable for the work Smith performed as a new attorney.  Based on the limited information about Smith that Plaintiff has provided, the Court finds that a rate of $175 per hour is reasonable, which reduces the total amount billed by Smith to $5,337.50.

### C.  Hours Reasonably Expended and Adjustment of Lodestar

Defendant argues that Plaintiff's requested fee award is unreasonably high and should be reduced because (1) Plaintiff seeks to recover fees attributable to multiple lawsuits, including fees already recovered; (2) Plaintiff achieved only limited success; (3) Plaintiff seeks recovery for administrative tasks that are not customarily charged for or recovered in this jurisdiction; (4) Plaintiff seeks recovery for duplicative hours expended on internal conferences and reviews; and (6) Eisenberg & Baum LLP's billing descriptions are inadequate and appear to have been enhanced post-hoc to make them compliant with the descriptive requirements of Local Rule of Civil Procedure 54.2.  (Doc.

121 at 6, 9-17.)

In reply, Plaintiff argues that the claims on which it succeeded are related to and intertwined with the claims on which it did not succeed, such that a reduction of fees is unwarranted.   (Doc. 128 at 1-7.)   Plaintiff disputes Defendant's argument regarding duplicative billing but adjusts its fee request downward by $1,860.00 to account for potentially duplicative time entries.   (*Id.* at 7-8.)   Plaintiff argues that it properly billed for tasks Defendant argues are clerical or related to internal conferences, and that the billing records of Eisenberg & Baum LLP are appropriate.   (*Id.* at 8-10.)

### 1. Duplicative Entries

A court may allow for the recovery of fees for work done on other cases if the party seeking the fee award proves that the fees "incurred in the other litigation resulted in work product that was actually utilized in the instant litigation, that the time spent on [the] other litigation was 'inextricably linked' to the issues raised in the present litigation, and that the [party] has not previously been compensated for those fees." *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993); *see also Bender v. Newell Window Furnishings*, *Inc.*, 560 F. App'x 469, 474 (6th Cir. 2014).

Plaintiff's attorneys performed inextricably linked work that benefited multiple related cases.  However, the Court has located numerous timekeeping entries that appear to be duplicative of entries for which Plaintiff has already recovered fees in CV 19-180. *See Gulfstream III Assocs.*, 995 F.2d at 420 (party seeking fees must prove it has not previously been compensated for the fees).   Plaintiff's explanation for these apparently duplicative entries is unsatisfactory.  Plaintiff claims that the entries were split into thirds and billed in three cases.   (Doc. 128 at 7-8 (explaining that, "[i]n some cases," work was split "into thirds" and "one-third of the total effort" was billed to each of three cases); *see also* Doc. 116-1 at 46 ("to the extent any time entry here relates to an overlapping effort, it has been tailored to a portion of the effort that can reasonably be related to this specific case").)   However, nothing in the timekeeping records themselves indicates these entries

- 10 -

have been split between cases.[9]  Plaintiff appears to concede that some of the entries are indeed duplicative and has reduced its fee request accordingly.  (*See* Doc. 128-1 at 2.)  However, a review of the docket indicates that entries that Plaintiff has not eliminated from its fee request are duplicative.  For example, Plaintiff requests reimbursement of 3.60 hours for Rozynski's attendance at a November 5, 2021 settlement conference and 3.80 hours for his attendance at a March 30, 2022 settlement conference.  (Doc. 116-1 at 28-29.)  Plaintiff also requested and received reimbursement for identical timekeeping entries in CV 19-180.  (Doc. 128-1 at 33-34 in CV-19-180.)  The settlement conference on November 5, 2021, lasted approximately 3.60 hours (Doc. 79) and the settlement conference on March 30, 2022, lasted approximately 3.80 hours (Doc. 91).  Accordingly, it appears that Plaintiff charged the full amount of Rozynski's time for attending those conferences in both CV 19-180 and the above-captioned case, rather than charging only a portion of his time in each case.

Plaintiff's Reply avers that Richards's April 19, 2018 and May 2, 2018 entries,[10] Silverman's May 24, 2019 entry, and a law clerk's July 9, 2021 and July 14, 2021 entries reflect times split between cases.  (Doc. 128 at 7-8.)  Accordingly, the Court will not reduce Plaintiff's attorneys' fee award based on the apparent duplication of those entries.  However, because Plaintiff has not adequately explained other apparently duplicative entries that seem to request reimbursement of fees already obtained in CV 19-180, the Court will eliminate the fees reflected in the following charts from Plaintiff's attorneys' fee award, resulting in a total reduction of $18,587.50.  *See* LRCiv 54.2(e)(2) (court may reduce award if party fails to adequately describe the services rendered such "that the reasonableness of the charge can be evaluated").[11]

---

[9] Plaintiff highlighted certain pre-consolidation entries to indicate they were split between cases.  (*See* Doc. 116-1 at 70.)  None of the apparently duplicative entries listed below were highlighted.

[10] Plaintiff's Reply refers to a May 2, 2019 entry (Doc. 128 at 7), but the year appears to have been a typo (*see* Doc. 116-1 at 70).

[11] To the extent some of the entries reflected in the following charts were excluded from the attorneys' fee award in CV 19-180 because the corresponding entries filed in that case were insufficiently descriptive, the Court finds Plaintiff is not entitled to a second chance at recovering attorneys' fees for those entries in this case.

**Eisenberg & Baum LLP:**

| Date | Timekeeper | Time | Abbreviated Description | Citation |
|---|---|---|---|---|
| 4/18/18 | AR | 0.30 | Confer with Jay and Erica re: Complaint | *Compare* Doc. 116-1 at 14, *with* Doc. 128-1 at 16 in CV 19-180 |
| 5/31/19 | AR | 0.30 | Review/edit Rule 26(f) Report | *Compare* Doc. 116-1 at 16, *with* Doc. 128-1 at 21 in 19-180 |
| 9/18/19 | AR | 0.10 | E-mail opposing counsel re: settlement | *Compare* Doc. 116-1 at 17, *with* Doc. 128-1 at 21 in 19-180 |
| 11/1/19 | AR | 0.10 | Review stipulation to amend scheduling order | *Compare* Doc. 116-1 at 17, *with* Doc. 128-1 at 22 in 19-180 |
| 11/11/19 | AR | 0.20 | Confer with Oller re: settlement | *Compare* Doc. 116-1 at 17; *with* Doc. 128-1 at 22 in 19-180 |
| 1/2/20 | AR | 0.10 | Stipulation and Motion to Amend Scheduling Order | *Compare* Doc. 116-1 at 17, *with* Doc. 128-1 at 23 in 19-180 |
| 5/10/21 | RL | 2.0 | Draft sections of *Daubert* Motion | *Compare* Doc. 116-1 at 27, *with* Doc. 128-1 at 32 |
| 5/11/21 | RL | 1.70 | Draft sections of *Daubert* Motion | *Compare* Doc. 116-1 at 27, *with* Doc. 128-1 at 32 |
| 11/5/21 | AR | 3.60 | Settlement conference | *Compare* Doc. 116-1 at 28, *with* Doc. 128-1 at 33 |
| 3/30/22 | AR | 3.80 | Settlement conference | *Compare* Doc. 116-1 at 29, *with* Doc. 128-1 at 34 |

. . . .

. . . .

. . . .

. . . .

**Richards & Moskowitz PLC:**

| Date | Timekeeper | Time | Description | Citation |
|---|---|---|---|---|
| 6/1/21 | MLV | 0.20 | Prepare pretrial conference binder for Richards and Stuart | *Compare* Doc. 116-1 at 60, *with* Doc. 128-2 at 22 in 19-180 |
| 7/26/21 | MLV | 1.00 | Pull exhibits for settlement position statement; finalize and email statement to Judge Ferraro | *Compare* Doc. 116-1 at 60, *with* Doc. 128-2 at 25 in 19-180 |
| 1/6/22 | MLV | 0.70 | Rename and organize trial exhibits | *Compare* Doc. 116-1 at 60, *with* Doc. 128-2 at 28 |
| 1/13/22 | MLV | 0.50 | Upload Plaintiff's trial exhibits to Ipro | *Compare* Doc. 116-1 at 60, *with* Doc. 128-2 at 28 in 19-180 |
| 3/9/22 | LCP | 4.90 | Draft response to Motion to Transfer Venue | *Compare* Doc. 116-1 at 61, *with* Doc. 128-2 at 31 in 19-180 |

. . . .

. . . .

**Baskin Richards PLC:**

| Date | Timekeeper | Time | Description | Citation |
|---|---|---|---|---|
| 11/30/17 | WAR | 0.10 | Confer with Rozynski and Southwest Fair Housing Council personnel | *Compare* Doc. 116-1 at 70, *with* Doc. 128-2 at 43 |
| 8/10/18 | AJM | 0.50 | Review case documents for MIDP responses; draft MIDP responses | *Compare* Doc. 116-1 at 70, *with* Doc. 128-2 at 43 in 19-180 |
| 8/13/18 | AJM | 0.30 | Draft MIDP responses; review client documents for same | *Compare* Doc. 116-1 at 70, *with* Doc. 128-2 at 43 in 19-180 |
| 10/10/18 | DEW | 0.20 | Review Complaint and notes from meet and confer conference; review | *Compare* Doc. 116-1 at 70, *with* Doc. 128-2 at 43 in 19- |

| | | | and revise joint report | 180 |
|---|---|---|---|---|
| 11/5/18 | DEW | 0.10 | Review cases referenced in draft for public orders and holdings | *Compare* Doc. 116-1 at 70, *with* Doc. 128-2 at 44 |
| 5/30/19 | PAS | 0.10 | Confer with Lockner regarding joint report | *Compare* Doc. 116-1 at 70, *with* Doc. 128-2 at 44 in 19-180 |
| 5/31/19 | PAS | 0.10 | Revise draft joint case management report | *Compare* Doc. 116-1 at 70, *with* Doc. 128-2 at 44 |
| 6/4/19 | PAS | 0.20 | Prepare for and attend Rule 16 telephonic conference | *Compare* Doc. 116-1 at 70, *with* Doc. 128-2 at 44 |
| 1/21/20 | PAS | 0.60 | Confer with Hardwick re: depositions; assemble records for depositions | *Compare* Doc. 116-1 at 74, *with* Doc. 128-2 at 46 |
| 1/22/20 | PAS | 2.40 | Prepare for, attend, and confer re: depositions of Beebe and Johnson | *Compare* Doc. 116-1 at 74, *with* Doc. 128-2 at 46 |
| 1/23/20 | PAS | 2.80 | Prepare for, attend, and confer re: depositions of Young and Hardwick | *Compare* Doc. 116-1 at 74, *with* Doc. 128-2 at 46 |
| 1/24/20 | PAS | 0.90 | Prepare for and attend deposition of Pehlic; Rule 30(b)(5) deposition notice and discovery responses | *Compare* Doc. 116-1 at 74, *with* Doc. 128-2 at 46 |
| 1/27/20 | PAS | 0.20 | Research contact information for fact witnesses | *Compare* Doc. 116-1 at 74, *with* Doc. 128-2 at 46 |
| 1/28/20 | PAS | 0.20 | Schedule defendant depositions | *Compare* Doc. 116-1 at 74, *with* Doc. 128-2 at 46 |
| 1/29/20 | PAS | 0.40 | Prepare for depositions; confer with Leslie | *Compare* Doc. 116-1 at 74, *with* Doc. 128-2 at 46 |
| 1/30/20 | PAS | 0.40 | Confer with Baum and Rozynski; deposition outlines | *Compare* Doc. 116-1 at 74, *with* Doc. 128- |

| | | | | | 2 at 46 |
|---|---|---|---|---|---|
| 1/31/20 | PAS | 0.40 | | Confer with Baum and Rozynski; 30(b)(6) deposition notices | *Compare* Doc. 116-1 at 74, *with* Doc. 128-2 at 46 |
| 2/3/20 | PAS | 1.20 | | Confer with Baum, Leslie, and Oller; review documents and work on logistics for depositions | *Compare* Doc. 116-1 at 74, *with* Doc. 128-2 at 46 |
| 2/4/20 | PAS | 1.60 | | Confer with Baum; Rule 45 subpoenas and deposition notices; review records for depositions | *Compare* Doc. 116-1 at 74, *with* Doc. 128-2 at 46 |
| 2/5/20 | PAS | 1.00 | | Confer with Baum, Leslie, Harris; deposition preparation | *Compare* Doc. 116-1 at 74-75, *with* Doc. 128-2 at 46 |
| 2/6/20 | PAS | 1.20 | | Deposition outline/preparation; confer with Leslie; revise Rule 30(b)(6) deposition notice | *Compare* Doc. 116-1 at 75, *with* Doc. 128-2 at 47 |
| 2/7/20 | PAS | 1.30 | | Review supplemental production; deposition logistics; confer with Baum; deposition outlines and exhibits | *Compare* Doc. 116-1 at 75, *with* Doc. 128-2 at 47 |
| 2/8/20 | PAS | 0.90 | | Deposition outline | *Compare* Doc. 116-1 at 75, *with* Doc. 128-2 at 47 |
| 2/9/20 | PAS | 2.00 | | Deposition outlines | *Compare* Doc. 116-1 at 75, *with* Doc. 128-2 at 47 |
| 2/10/20 | PAS | 0.40 | | Confer with Baum and visit Griffin Group re: 30(b)(6) deposition | *Compare* Doc. 116-1 at 75, *with* Doc. 128-2 at 47 |
| 2/11/20 | PAS | 1.60 | | Prepare for and attend 30(b)(6) deposition of Mejia; confer with Baum | *Compare* Doc. 116-1 at 75, *with* Doc. 128-2 at 47 |
| 2/12/20 | PAS | 0.20 | | Confer with Leslie, Goodwin, Hardwick | *Compare* Doc. 116-1 at 75, *with* Doc. 128- |

| | | | | |
|---|---|---|---|---|
| | | | | 2 at 47 |
| 2/13/20 | PAS | 0.80 | Confer with Hardwick, Baum, Oller; email to opposing counsel; supplemental discovery responses | *Compare* Doc. 116-1 at 75, *with* Doc. 128-2 at 47 |
| 2/14/20 | PAS | 0.80 | Confer with Oller, Baum; draft stipulation to extend deadlines | *Compare* Doc. 116-1 at 75, *with* Doc. 128-2 at 47 |
| 2/18/20 | PAS | 0.20 | Responses to follow-up discovery requests | *Compare* Doc. 116-1 at 75, *with* Doc. 128-2 at 47 |
| 2/20/20 | PAS | 0.50 | Confer with Hardwick; responses to follow-up discovery requests | *Compare* Doc. 116-1 at 75, *with* Doc. 128-2 at 47-48 |
| 2/21/20 | PAS | 1.0 | Follow-up discovery; research regarding elements of claims | *Compare* Doc. 116-1 at 76, *with* Doc. 128-2 at 48 |
| 2/22/20 | PAS | 0.30 | Email exchange with Hardwick; review documents re: follow-up discovery requests | *Compare* Doc. 116-1 at 76, *with* Doc. 128-2 at 48 |
| 2/24/20 | PAS | 0.40 | Confer with Hardwick; review documents for disclosure | *Compare* Doc. 116-1 at 76, *with* Doc. 128-2 at 48 |
| 2/25/20 | PAS | 1.60 | Confer with Rozynski and Hardwick; supplemental MIDP responses | *Compare* Doc. 116-1 at 76, *with* Doc. 128-2 at 48 |
| 2/26/20 | PAS | 2.40 | Supplemental MIDP responses; additional discovery requests/disclosure; confer with Rozynski | *Compare* Doc. 116-1 at 76, *with* Doc. 128-2 at 48 |
| 2/27/20 | PAS | 2.00 | Confer with Hardwick, Richards, Leslie; review documents and website; supplemental MIDP responses | *Compare* Doc. 116-1 at 76, *with* Doc. 128-2 at 48 |
| 2/28/20 | PAS | 0.90 | Supplemental MIDP responses; | *Compare* Doc. 116-1 at 76, |

| | | | confer with Hardwick | *with* Doc. 128-2 at 48 |
|---|---|---|---|---|
| 3/3/20 | PAS | 1.90 | Supplemental discovery responses and document production; confer with Hardwick, Young | *Compare* Doc. 116-1 at 76, *with* Doc. 128-2 at 48 |
| 3/4/20 | PAS | 0.80 | Supplemental discovery responses and document production | *Compare* Doc. 116-1 at 76, *with* Doc. 128-2 at 48 |
| 3/5/20 | PAS | 0.70 | Supplemental discovery responses | *Compare* Doc. 116-1 at 76, *with* Doc. 128-2 at 48 |
| 3/6/20 | PAS | 0.90 | Confer with Leslie; research case law and factual record | *Compare* Doc. 116-1 at 76-77, *with* Doc. 128-2 at 48-49 |
| 3/11/20 | PAS | 0.30 | Review case law for summary judgment motion | *Compare* Doc. 116-1 at 77, *with* Doc. 128-2 at 49 |
| 3/13/20 | PAS | 0.50 | Review case law for summary judgment motion | *Compare* Doc. 116-1 at 77, *with* Doc. 128-2 at 49 |
| 3/27/20 | PAS | 0.60 | Research and review file for summary judgment motion | *Compare* Doc. 116-1 at 77, *with* Doc. 128-2 at 49 |
| 4/8/20 | PAS | 0.60 | Review case law and case records for summary judgment motion | *Compare* Doc. 116-1 at 77, *with* Doc. 128-2 at 49 |
| 4/15/20 | PAS | 0.50 | Review case records for summary judgment motion | *Compare* Doc. 116-1 at 77, *with* Doc. 128-2 at 49 |
| 4/20/20 | PAS | 0.10 | Confer with Rozynski | *Compare* Doc. 116-1 at 77, *with* Doc. 128-2 at 49 |
| 5/11/20 | PAS | 0.30 | Draft joint settlement status report; confer with Leslie | *Compare* Doc. 116-1 at 77, *with* Doc. 128-2 at 49 |

. . . .

. . . .

### 2. Clerical Tasks

Depending on the prevailing practice in the relevant market, skilled paralegal work may be billed at market rates. *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989). "By encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of paralegal hours encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes." *Id.* (internal quotation marks omitted). However, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Id.* at 288 n.10. Rather, purely clerical tasks, such as filing and document organization, should be "subsumed in firm overhead rather than billed at paralegal rates." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009).

The Court finds the entries listed in the chart below to be purely clerical in nature and therefore deletes them from Plaintiff's attorneys' fees award, resulting in a total reduction of $1,637.50.[12]

| Date | Timekeeper | Time | Abbreviated Description | Citation |
|------|-----------|------|------------------------|----------|
| 4/3/17 | AR | 0.10 | Set up meeting | Doc. 116-1 at 13 |
| 11/28/17 | AR | 0.20 | Set up meeting | Doc. 116-1 at 13 |
| 4/27/18 | AR | 0.20 | Set up meeting | Doc. 116-1 at 14 |
| 6/6/19 | AR | 0.30 | Review and docket scheduling order | Doc. 116-1 at 16 |
| 5/20/20 | PAS | 0.30 | Assemble and email documents | Doc. 116-1 at 77 |
| 4/7/21 | SGS | 0.10 | Identify bates numbers for exhibits and circulate draft pretrial order | Doc. 116-1 at 59 |
| 10/13/22 | GCG | 0.10 | Prepare ShareFile link with juror questionnaires | Doc. 116-1 at 62 |
| 10/20/22 | NMR | 0.30 | Locate and | Doc. 116-1 at |

---

[12] Clerical entries that have already been deleted as duplicative are excluded.

| Date | Timekeeper | Time | | Citation |
|------|-----------|------|---|---------|
| | | | organize exhibits | 62 |
| 10/21/22 | GCG | 2.10 | Organize exhibits in trial binder and copy onto flash drive | Doc. 116-1 at 62 |
| 10/24/22 | NMR | 4.10 | Print and organize exhibits | Doc. 116-1 at 63 |
| 10/24/22 | GCG | 3.20 | Print and organize exhibits | Doc. 116-1 at 63 |

. . . .

### 3. Internal Conferences

It is not "necessarily unreasonable" for multiple timekeepers to request fees for the same task, but "fee requests must not be duplicative or reflect an excessive amount of time spent on a task." *RHN Inc. v. CNA Nat'l Warranty Corp.*, No. CV-19-02960-PHX-GMS, 2021 WL 100858, at *2-3 (D. Ariz. 2021). For example, it may be unreasonable to bill for multiple attorneys attending the same internal meetings. *See id.* at *3.

Defendant has not shown that Plaintiff unreasonably billed multiple times for internal meetings. Accordingly, the Court declines to reduce Plaintiff's attorneys' fee award on this basis.

### 4. Vague Entries

The entries in the following chart are too vague for the Court to ascertain their reasonableness, and therefore the fees associated with the entries will be reduced or eliminated from Plaintiff's attorneys' fee award, resulting in a total reduction of $822.50. *See* LRCiv 54.2(e)(2) (court may reduce award if party fails to adequately describe the services rendered such "that the reasonableness of the charge can be evaluated").[13]

| Date | Timekeeper | Time | Abbreviated Description | Citation |
|------|-----------|------|------------------------|---------|
| 4/12/18 | AR | 0.20 | Correspondence with Hardwick re: evidence | Doc. 116-1 at 14 |
| 10/19/19 | AR | 0.25 | Review discovery and | Doc. 116-1 at 17 |

---

[13] The Court herein lists the time values that are being removed, which do not necessarily correspond to the recorded hours.

| | | | take notes | |
|---|---|---|---|---|
| 11/5/19 | AR | 0.10 | Review Court Order | Doc. 116-1 at 17 |
| 12/4/19 | AR | 0.20 | Settlement discussions | Doc. 116-1 at 17 |
| 1/6/20 | AR | 0.10 | Review Court Order | Doc. 116-1 at 18 |
| 1/14/20 | AR | 0.15 | Review and provide feedback on supplemental responses | Doc. 116-1 at 18 |
| 5/28/20 | AR | 0.50 | Conversation about change of strategy on summary judgment motion | Doc. 116-1 at 21 |
| 5/11/21 | AR | 0.30 | Draft/edit motion in limine | Doc. 116-1 at 27 |
| 5/12/21 | AR | 0.15 | Advise on strategy for motion in limine | Doc. 116-1 at 27 |
| 12/16/21 | AR | 0.20 | Advise on proposed voir dire | Doc. 116-1 at 28 |
| 2/11/22 | AR | 0.20 | Advise on proposed jury instructions | Doc. 116-1 at 28 |

. . . .

The elimination of fees associated with duplicative, clerical, and vague time entries; the reduction in Smith's hourly rate; the elimination of fees associated with the preparation of Plaintiff's Motion for Attorneys' Fees; and the elimination of fees removed by Plaintiff in its Reply results in a total reduction of $27,457.50 and a lodestar figure of $133,975.00

### 5. Post-Hoc Enhancement of Eisenberg & Baum LLP Billing Records

Attorneys' fees are generally not compensable when attorneys fail to maintain contemporaneous time records. *Ariz. Dream Act Coal. v. Brewer*, No. CV 12-02546-PHX-DGC, 2018 WL 6448395, at *7-8 (D. Ariz. Dec. 10, 2018) (reducing fee award because some timesheets appeared to have been "created or elaborated after the work was performed"); *see also Hensley*, 461 U.S. at 438 n.13 (affirming across-the-board

reduction for lack of contemporaneous time records).  "It is not enough to recreate the records from documents, calendars, and other extrinsic evidence."  *Ariz. Dream Act Coal.*, 2018 WL 6448395, at *7.

Plaintiff indicates that Eisenberg & Baum LLP kept contemporaneous timekeeping records but removed information from them when it submitted them in CV 19-180, to avoid disclosing to Defendant strategies and attorney work product.  (Doc. 128 at 9-10.)  The Court finds this explanation lacking.  If Plaintiff had removed information when submitting the timekeeping records of Eisenberg & Baum LLP in CV 19-180 in order to avoid disclosing strategy or work product, the Court would expect Plaintiff to have provided that explanation in its Reply filed in CV 19-180 after Defendant challenged the descriptive sufficiency of the timekeeping records in that case; however, Plaintiff did not do so.  (*See* Doc. 151 at 7-8 in CV 19-180.)  Defendant's explanation for the descriptive differences in the timekeeping records submitted in CV 19-180 and the present case—that Eisenberg & Baum LLP made post hoc enhancements to the descriptions in their timekeeping records—appears more plausible based on the record before the Court.  Because post hoc enhancement likely occurred only to timekeeping entries recorded prior to the filing of Defendant's opposition to Plaintiff's Motion for Attorneys' Fees in CV 19-180 (*see* Doc. 136 in CV 19-180), the Court will subtract 20% of Eisenberg & Baum LLP's fees for entries reflecting work performed prior to June 14, 2022, resulting in a total additional reduction of $8,383.50 and a lodestar figure of $125,591.50.  The Court will entertain reconsideration of this reduction if Plaintiff submits metadata showing there was no post hoc alteration of Eisenberg & Baum LLP's billing records.

### 6.  Limited Success

Defendants argue that Plaintiff's fee award should be reduced by $93,225.00, reflecting fees not directly attributable to the doorbell issue on which Plaintiff prevailed.  (Doc. 121 at 9-12.)  The Court declines to parse Plaintiff's timekeeping entries to determine whether they reflect tasks directly related to the doorbell issue, as doing so

1   would be unnecessarily burdensome and time-consuming.  However, the Court agrees

2   that Plaintiff's limited success in this matter warrants a slight adjustment to the lodestar

3   figure.  *See Harris v. Marhoefer*, 24 F.3d 16, 18-19 (9th Cir. 1994) (affirming across-the-

4   board reduction for limited success); *see also Ferland v. Conrad Credit Corp.*, 244 F.3d

5   1145, 1150 (9th Cir. 2001) (court may reduce the lodestar figure on an across-the-board

6   basis so long as it explains that choice).

7          The Court granted summary judgment in Defendant's favor on Plaintiff's claim

8   regarding Defendant's alleged failure to provide an ASL interpreter.  (Doc. 62.)  That

9   claim formed a significant part of this litigation, but the work that Plaintiff's attorneys

10  expended prosecuting that claim was in large part intertwined with the work expended on

11  the doorbell claim on which Plaintiff prevailed.  Accordingly, the Court finds that an

12  overall downward adjustment of 10% of the lodestar figure sufficiently accounts for

13  Plaintiff's limited success.  The other factors—including the time involved in this case

14  and the resultant preclusion of other work, the nature of the case, the contingent fee at

15  issue, and the experience and ability of counsel—all support an award of the lodestar

16  figure without further adjustment.  *See Carter*, 757 F.3d at 869.[14]  A 10% downward

17  adjustment of the lodestar figure results in a reduction of $12,559.15.  Accordingly,

18  Plaintiff's total attorneys' fee award is $113,032.35.

19         **D. Expenses**

20         Plaintiff requests an award of $3,255.05 in non-taxable expenses, including

21  $2,455.05 in travel-related expenses and $800.00 in expert witness fees.  (Doc. 116 at 12-

22  14; *see also* Doc. 116-1 at 80, 82, 84, 86-87, 89.)  Defendant objects to Plaintiff's request

23  for expert witness fees, as Plaintiff's expert only opined regarding the ASL interpreter

24  issue and did not testify at the bench trial in this matter.  (Doc. 121 at 11 n.4.)  Plaintiff

25  did not specifically respond to this argument.  (*See* Doc. 128.)

26         Dr. Shepard-Kegel did not testify at the bench trial in this matter, and Plaintiff has

---

[14] To the extent Defendant argues that the lodestar figure should be adjusted downward
due to Plaintiff's settlement negotiation tactics (*see* Doc. 121), the Court declines to make
any adjustment on that basis.

1  not shown that the $800.00 in expert witness fees charged by Dr. Shepard-Kegel

2  benefitted the claims on which Plaintiff prevailed in this litigation.  Accordingly, the

3  Court will reduce Plaintiff's award of non-taxable expenses by $800.00.  The Court will

4  award $2,422.25 in travel-related expenses.[15]

5          **IT IS ORDERED** that Plaintiff's Motion for Attorneys' Fees, Costs, and

6  Litigation Expenses (Doc. 116) is **partially granted**.  Plaintiff is awarded $113,032.35 in

7  attorneys' fees and $2,422.25 in non-taxable expenses.

8          Dated this 7th day of July, 2023.

9

10

11

12                                              _____

13                                              Honorable Rosemary Márquez
                                                United States District Judge

14

15

16

17

18

19

20

21

22

23  _____

    [15] Plaintiff requests $1,913.40 in Lubin's travel-related expenses and attaches receipts
24  reflecting $1,065.20 spent on plane tickets and $1,087.20 spent on lodging.  (Doc. 116-1
    at 80, 86-87.)  Plaintiff indicates that Lubin did not stay the entire period reflected on the
25  lodging receipt, and Plaintiff avers that it removed one-fourth of the lodging charge in
    light of Lubin's shortened stay.  (Doc. 116-1 at 80 n.1.)  By the Court's calculation, the
26  removal of one-fourth of the charge reflected on the lodging receipt results in a lodging
    expense of $815.40.  Plaintiff has not adequately described how it calculated its higher
27  figure.  *See* LRCiv 54.2(e)(3) (a party's failure to adequately itemize and verify non-
    taxable expenses may result in their disallowance).  Accordingly, the Court awards only
28  $1,880.60 for Lubin's travel-related expenses.  The Court awards the full $470.96
    requested for Richards's lodging expenses and the $70.69 requested for food expenses
    during travel for the trial period.

- 23 -